FILED'06 MAY 12 13:05USDC-ORP

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARCIA B. COOK,                          )
                                         )
                    Plaintiff,           )     Case No. 05-607-KI
                                         )
        vs.                              )     OPINION AND ORDER
                                         )
JO ANNE B. BARNHART,                     )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )


        Alan Stuart Graf
        P. O. Box 98
        Summertown, TN  38483

                Attorney for Plaintiff

        Karin J. Immergut
        United States Attorney
        District of Oregon
        Neil J. Evans
        Assistant United States Attorney
        1000 S. W. Third Avenue, Suite 600
        Portland, Oregon  97204-2902


Page 1 - OPINION AND ORDER

Michael McGaughran
Regional Chief Counsel, Region X, Seattle
Social Security Administration
David M. Blume
Special Assistant United States Attorney
Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Marcia Cook brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I affirm

the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and

416.920(e).

     If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his or her age, education, and work experience.  The burden shifts to

the Commissioner to show what gainful work activities are within the claimant's capabilities.

Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able

to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

     The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

     The ALJ reviewed Cook's medical records and noted the numerous doctors who

concluded that Cook's depression would not preclude her from working.   He found that her

statements about the impact of her impairments on her ability to work were not entirely credible.

The ALJ concluded that Cook has no impairment or combination of impairments which is severe

under the regulations.  Due to this conclusion, the ALJ stopped the analysis at the second step

and determined that Cook was not disabled under the Act.

## FACTS

Marcia Cook, who was sixty years old at the time of the decision, alleges disability since

November 15, 2000 because of depression, incontinence, asthma, hypertension, and obesity.

Cook has a Bachelor of Arts degree and attended one year of law school.  She has experience as

an office worker for several government agencies and nonprofit organizations and as a charity

fundraiser.  Cook detailed her search for a new job, up through midyear 2001, and a string of

short-term employment from the mid 1990s until 2000.

Cook lives alone and takes care of her household chores, shopping, and cooking without

help.  She visits her friends nearly every day, eats out with them a few nights a week, uses her

computer and the Internet but gets confused with the process at times, and has no trouble

sleeping.  Cook has had some knee pain, particularly when kneeling an excessive amount or

climbing stairs.  Her urge incontinence, hypertension, and exercise-induced asthma are

successfully treated with medications.

As Cook's doctors tried different antidepressants, she would describe her mood as

varying from a low of 5 out of 10 up to a high of 8 out of 10.  Cook told her doctors that the

medications increased her energy level, particularly when two were used in combination

beginning in May 2002.  Cook complains of fatigue, concentration and memory problems, and

crying spells triggered by certain activities.  Cook wants to stay in bed some days but does not

allow herself to do it.

Cook, who has been overweight for many years, is diagnosed with morbid obesity, and has a body mass index of 44. She believes that the obesity might lead to her depression. Cook loves to walk and tries to walk a mile a day but does not "often get there." Tr. 231.

On January 22, 2002, Cook's primary care physician, Dr. Read, reported that Cook had no limitations sitting, standing, walking, lifting, carrying, handling objects, hearing, or speaking. Dr. Cook also had no concerns about Cook's understanding, memory, and sustained concentration and stated that Cook would have no problems in regard to social interactions or adaptability.

On November 27, 2002, Dr. Nelson, a psychologist who had been treating Cook for three weeks, wrote that she diagnosed Cook with major depressive disorder, recurrent, moderate, based on symptoms of depressed mood, tearfulness, appetite and weight changes, lack of energy, irritability, difficulty concentrating and feeling "like a failure." Tr. 194. Dr. Nelson ended the opinion with:

> At our last session, Ms. Cook indicated that she is feeling better than she has in the past 16 years. In my contact with Ms. Cook, there have been no indications that Ms. Cook would have difficulty with attendance or regular production stamina in the type of job described in your letter."

Id.

On November 20, 2002, Dr. Zawada, Cook's new primary care physician since a month earlier, stated that she had limited information concerning's Cook ability to perform physical activities and had just learned that Cook had knee pain. Since Cook provided that information during an appointment in which she sought approval to join an exercise program for weight management, Dr. Zawada concluded that Cook should not be limited in performing physical activities required by most jobs. Concerning Cook's psychological state, Dr. Zawada stated that

Page 6 - OPINION AND ORDER

Cook felt she was benefitting substantially from the recently started counseling sessions and that

Cook "does not have severe vegetative symptoms that I feel would preclude her from holding

down a job, but I will say that her concentration, attention, and memory have not been

specifically tested on any of our interactions to date." Tr. 203.

## DISCUSSION

I.    Credibility Determination

      At step two of the analysis, the ALJ concluded that Cook has no impairment or

combination of impairments which is severe under the regulations. This finding ended the

analysis. Cook objects that the ALJ based his finding of non-severity at step two largely on his

disbelief of her testimony. She notes the records with diagnoses of medically determinable

impairments that support her reporting of symptoms.

      When deciding whether to accept the subjective symptom testimony of a claimant, the

ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce

objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom.

Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to

produce objective medical evidence of the symptom itself, the severity of the symptom, or the

causal relationship between the medically determinable impairment and the symptom. The

claimant is also not required to show that the impairment could reasonably be expected to cause

the severity of the symptom, but only to show that it could reasonably have caused some degree

of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the

credibility of the claimant's testimony regarding the severity of the symptoms. If there is no

affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ

makes specific findings stating clear and convincing reasons for the rejection, including which

testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

The ALJ discounted Cook's credibility because of discrepancies between assertions and

information contained in the documentary reports, her demeanor at the hearing, and lack of

evidence documenting a medically determinable impairment resulting in significant limitations in

her ability to perform work-related activities. The ALJ compared Cook's stated physical

impairments with the medical records showing successful treatment of the conditions with

medication. The ALJ then compared Cook's description of her depressive symptoms with the

fact that she does not allow herself to stay in bed and Cook's hearing testimony that she has five

good days a week if she is working and two bad days on the weekends when she recuperates.

The ALJ noted that Cook's period of acute confusion, which lasted about a week, was attributed

to several factors including depression, dehydration, a urinary tract infection, and abrupt

discontinuance of her antidepressant medication. Her medical records show that the depression

is generally controlled with medication and that she benefited substantially from counseling. The

ALJ also noted that Cook's alleged disability date is the same as the date a temporary job ended,

and that the medical records note Cook's long-term frustration with not being able to find a

suitable job, even though she had a college degree and experience. Finally, the ALJ noted that

Cook did not have any problems with the activities of daily living even though she lives alone,

and she socializes frequently with her friends.

The ALJ gave clear and convincing reasons for rejecting Cook's testimony and did not err

in his analysis.

Page 8 - OPINION AND ORDER

II.    <u>Development of the Record</u>

Cook contends that the ALJ failed to fully and fairly develop the record because there is no medical source statement. Without this, Cook contends that the ALJ lacked a reliable basis to determine her residual functional capacity, causing the ALJ to be unable to base his step two finding on substantial evidence.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests.

The ALJ must supplement the record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous. <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005). The supplementation can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented. <u>Tonapetyan</u>, 242 F.3d at 1150.

Here, the record is neither ambiguous nor inadequate. Drs. Read, Nelson, and Zawada all opined that Cook had no limitations which would prevent her from working. The treatment of her physical symptoms was successful. The treatment of her depression did not lift the depression completely but Cook's treating psychologist believed that Cook could work and noted that Cook felt better than she had in 16 years, back to a time when Cook successfully worked full time. I conclude that the ALJ fulfilled his duty to fully and fairly develop the record.

III.    <u>Step Two Determination</u>

The threshold at step two is a low one.  It is a "de minimis screening device [used] to dispose of groundless claims."  <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005) (internal quotation omitted).

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities.  If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.

Social Security Ruling 85-28.

I agree with the ALJ that there is no evidence on which to base a finding that Cook suffers from more than mild restrictions, either physical, psychological, or in combination.  All of her treating physicians are in agreement.  Cook's impairments would not have more than a minimal effect on her ability to work, if she could locate a job.  There is substantial evidence for the ALJ to determine that the medical evidence clearly established that Cook did not have a medically severe impairment or combination of impairments.  It was appropriate to end the sequential analysis at step two.


///


///


///


Page 10 - OPINION AND ORDER

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____ 9th _____ day of May, 2006.

_____
Garr M. King
United States District Judge